672

GEORGE I. BUMBAUGH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17480.    Promulgated February 13, 1928.

*C. H. Garnett*, *Esq.*, and *E. R. Willson*, *C. P. A.*, for the petitioner.

*T. M. Mather*, *Esq.*, for the respondent.

OPINION.

MILLIKEN: Two questions are presented for consideration by the pleadings: First, Was there a sale of partnership property in the year 1920 so as to entitle petitioner to report the proportionate gain derived therefrom in that year, rather than being required to report the total gain as derived from a sale occurring in the year 1921?

and, second, What was the fair market value of the stock of the M. T. C. Oil & Gas Co. received by petitioner in November, 1921? The respondent has treated the sale as occurring in the year 1921, and has treated the stock, when received by petitioner, as having a fair market value equal to the par value thereof.

The provisions of the contract of sale clearly provide that the $50,000 cash was to be placed in escrow in the Producers State Bank of Tulsa, and to await examination of titles and physical properties. The cash thus deposited was not in fact distributed to petitioner, who was on the cash receipts and disbursements basis, until the year 1921, and under the terms of the contract, could not have been distributed until the conditions subsequent had been complied with.·

One of the partners testified, upon direct examination, as follows:

Q. Now, was this $50,000 mentioned in the contract as the first payment and which you say was put up in the form of a draft in the Producers State Bank, later paid to the partnership?
A. Yes.

And upon cross-examination, testified as follows:

Q. Mr. Clover, I believe you testified that possession of this property was delivered on December 31, 1920, is that correct?
A. That is correct.
Q. How was it delivered?
A. By escrow agreement in the Producers State Bank.
Q. What was delivered on December 31?
A. The assignment, the leases—draft to us pending examination of title.

Petitioner testified, on direct examination, as follows:

Q. Now, this $50,000 they put in the bank under the contract, together with the title papers conveying the property on December 31, 1920—was that afterwards paid over to the partnership, that $50,000?
A. Yes.

It is clear that the sale, in so far as net income for taxation purposes is concerned, was a 1921 transaction. Petitioner was on the cash receipts and disbursements basis and received no proceeds from the sale until 1921. It is also of more than passing note that in the return filed by the partnership for the year 1921, the sale of the properties was reported as a transaction occurring in the year 1921.

It is earnestly contended by counsel for petitioner that the stock in the M. T. C. Oil & Gas Co., which petitioner received in November, 1921, in full and final payment, did not have a market value equal to the par value thereof but was worth only 30 or 40 cents on the dollar. Evidence was introduced relative to the manner in which the corporation had appreciated its assets over the cost thereof on its books of account, the extravagant manner in which it attempted to sell its stock by " high pressure advertising," and the large commissions paid to salesmen for selling their stock. No evi-

dence was introduced showing the sale of any of the stock of the corporation during the year 1921 for less than par. The corporation also owned various valuable properties other than the properties which they purchased from the partnership and we are uninformed as to the respective values of such other properties and for all we know such additional properties may have had a value which would eliminate an apparent appreciation over cost of the properties purchased from the partnership. Petitioner took the stock in payment of a debt due him, believing the stock to be worth par, and took it under a contract providing for its resale, and also received penalties until March, 1922, by reason of the failure of the corporation to act in pursuance of the understanding with him.

The mere fact that assets are appreciated over cost on the books of account of a given corporation, and that large sums of money were spent for promotion and advertising purposes, does not, in and of itself, prove that the par value of the stock received by petitioner should be discounted 60 or 70 per cent.

A pertinent fact in this connection is that at the time petitioner entered into the agreement to accept the stock, his debt was amply secured. The contract of sale had not been delivered. It was still in escrow. He was under no compulsion to make the agreement. The fact that under these circumstances petitioner accepted the stock at its par value, in payment of his debt, is more persuasive of its then market value than the judgment of witnesses whose testimony must, to some extent at least, be influenced by the fact that the company subsequently failed. Petitioner has not proven what value attached to the stock received by him in November, 1921, and in such circumstances we must approve the determination of the respondent.

*Judgment will be entered for the respondent.*